J-S34030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: H.E.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.E.B., MOTHER | : | No. 282 WDA 2018 |

Appeal from the Decree January 24, 2018
In the Court of Common Pleas of Blair County
Civil Division at No:  No. 2017 AD 52

BEFORE:   BOWES, J., STABILE, J., and STRASSBURGER*, J.

MEMORANDUM BY STABILE, J.:                **FILED SEPTEMBER 18, 2018**

R.E.B. ("Mother") appeals from the decree entered January 24, 2018, in the Court of Common Pleas of Blair County, which terminated involuntarily her parental rights to her daughter, H.E.M. ("Child"), born in November 2016.[1] After careful review, we affirm.

Blair County Children, Youth and Families ("CYF") became involved with Child due to an incident of domestic violence that occurred less than a week after her birth.  Specifically, Mother alleged that Father struck her while she was holding Child.  Mother filed a Protection From Abuse ("PFA") petition, but later withdrew it, prompting CYF to seek emergency custody.  The trial court

---

* Retired Senior Judge assigned to the Superior Court.

[1] The decree also terminated the parental rights of S.P.M. ("Father").  Father filed his appeal at Superior Court docket number 241 WDA 2018.  We address his appeal in a separate memorandum.

granted emergency custody on December 8, 2016. The court entered a shelter care order on December 15, 2016, and adjudicated Child dependent by order entered December 28, 2016.

On December 12, 2017, CYF filed a petition to terminate Mother's parental rights to Child involuntarily. The trial court conducted a termination hearing on January 23, 2018.[2] The following day, the court entered a decree terminating Mother's parental rights. Mother timely filed a notice of appeal on February 21, 2018, along with a concise statement of errors complained of on appeal.

Mother now raises the following claims for our review.

1. Whether the Trial Court properly found by clear and convincing evidence that [CYF] presented sufficient evidence to support termination of the parental rights of the Mother[?]

2. Whether the Trial Court properly considered the bond between the Mother and the child in making the decision to terminate her parental rights[?]

Mother's Brief at 1-2 (trial court answers omitted).

We consider Mother's claims mindful of the following standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and

---

[2] During the hearing, Child had the benefit of a guardian *ad litem* ("GAL"). The trial court concluded that the GAL could represent both Child's legal and best interests, given that Child was just over a year old. N.T., 1/23/18, at 45; *see In re T.S.*, ____ A.3d ____, 2018 Pa. LEXIS 4374 at *27-28 (Pa. 2018) (holding that a very young and pre-verbal child's right to counsel is satisfied when the trial court appoints an attorney-GAL who represents the child's best interests). We note that Child's GAL did not submit her own appellate brief but did send this Court a letter joining the arguments contained in CYF's brief.

credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. *See* 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the instant matter, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(2), (5), (8), and (b). In order to affirm, we need only agree with the court as to any one subsection of Section 2511(a) as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's

- 3 -

decision to terminate pursuant to Section 2511(a)(2) and (b), which provides

as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We begin by considering whether the trial court abused its discretion by

terminating Mother's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the

- 4 -

causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

In its opinion, the trial court concluded that CYF presented clear and convincing evidence to terminate Mother's parental rights involuntarily. Trial Court Opinion, 3/7/18, at 22. The court reviewed the history of this case and the relevant evidence at length. *Id.* at 6-21. The court reasoned that Mother failed to cooperate with services and did not demonstrate desire or consistent effort to remedy the conditions resulting in Child's placement in foster care. *Id.* at 22.

Mother contends that she complied with services from December 2016 through at least June 2017. Mother's Brief at 2-3, 6-7. Mother acknowledges that she failed to comply with services after June 2017 but insists that she was "attempting" to comply by attending an intensive outpatient treatment program addressing her substance abuse and mental health issues. *Id.* at 2-3, 7.

Our review of the record reveals the following. After Child's placement in foster care and adjudication of dependency in December 2016, the trial court ordered Mother to comply with a series of reunification goals. These

goals included 1) cooperating with Family Intervention Crisis Services ("FICS"); 2) undergoing a psychological evaluation; 3) continuing to receive mental health treatment; and 4) completing the Women Aware non-offender domestic violence program. Order of Adjudication and Disposition, 12/28/16, at 5.

Initially, Mother made substantial progress toward completing her goals. Mother complied with FICS reunification services by attending all meetings and visits with Child. Permanency Review Order, 5/4/17, at 8. She also participated in an evaluation with psychologist, Terry O'Hara, Ph.D. Among other things, Dr. O'Hara recommended that Mother provide drug screens and complete a substance abuse evaluation. Psychological Evaluation Report, 4/27/17, at 29.

Mother's progress began to deteriorate during the second half of 2017. Mother entered an intensive outpatient treatment program, through which she received substance abuse and mental health treatment. Permanency Review Order, 6/21/17, at 8; Permanency Review Order, 11/8/17, at 9. However, many of her drug screens were positive for marijuana and the program discharged her unsuccessfully on two occasions due to her lack of attendance. Permanency Review Order, 11/8/17, at 9-10; Permanency Review Order, 12/19/17, at 2-3. Mother ceased attending meetings with FICS reunification services, which then also discharged her unsuccessfully. Permanency Review Order, 11/8/17, at 9-10; Permanency Review Order, 12/19/17, at 2-3. Mother filed PFA petitions against Father in June 2017 and August 2017.

Permanency Review Order, 6/21/17, at 8; Permanency Review Order, 11/8/17, at 8-9.[3] Mother later withdrew the June 2017 petition, but obtained a final PFA order with respect to the August 2017 petition. Permanency Review Order, 11/8/17, at 9. Despite this order, Mother resumed living with Father, and another incident of domestic violence occurred in December 2017. Permanency Review Order, 12/19/17, at 2.

Dr. O'Hara conducted a reevaluation of Mother in September 2017 and found no evidence that she would be able to provide appropriate care for Child within a reasonable time. Psychological Evaluation Report, 11/8/17, at 16. Dr. O'Hara expressed concern regarding Mother's positive drug screens and her failure to comply with services. *Id.* at 14-16. He reported that Mother was highly defensive and externalized responsibility for her circumstances. *Id.* at 16. He also observed that Mother continued to experience domestic violence issues despite completing the Women Aware program. *Id.*

Mother remained noncompliant at the time of the termination hearing. For at least the third time, Mother's intensive outpatient treatment program discharged her unsuccessfully. N.T., 1/23/18, at 10. Mother's relationship with Father also continued to be a concern. Father filed a PFA petition against Mother alleging that she threatened his life. *Id.* at 12, 25. Ominously, Mother had moved into a new home that was approximately one block away from Father's home. *Id.* at 7.

---

[3] In its permanency review order entered November 8, 2017, the trial court changed Child's permanent placement goal to adoption.

Thus, the record supports the trial court's findings pursuant to Section 2511(a)(2). While Mother made initial progress toward completing services, she failed to maintain that progress. Mother failed to cooperate with both FICS reunification services and her intensive outpatient treatment program, resulting in at least three unsuccessful discharges. Mother also continued to pursue a relationship with Father as recently as December 2017, despite the existence of a final PFA order against him. While Mother argues that she was "attempting" to comply with services, the record disproves this claim. Child entered foster care in December 2016, the month after she was born, and has remained there ever since. Because it is clear that Mother will not remedy her parental incapacity and resume caring for Child at any point in the foreseeable future, we conclude that the court did not abuse its discretion.

We next consider whether the trial court abused its discretion pursuant to Section 2511(b). The requisite analysis is as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have

> with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted).

The trial court found that Mother's visits with Child go well but concluded that Mother and Child do not share a bond. Trial Court Opinion, 3/7/18, at 22-23. To the extent Mother and Child do share a bond, the court found that their bond is not strong, because Child lived with Mother for only the first few weeks of her life, and spent only a limited amount of time with her during supervised visits. *Id.* The court found that Child shares a bond with her pre-adoptive foster parents, with whom she has lived since December 2016. *Id.* at 23.

Mother contends that the trial court failed to consider evidence proving that she and Child do share a bond. Mother's Brief at 3, 8-9. Mother directs our attention to testimony presented during the termination hearing and prior dependency proceedings that her visitation with Child goes well and that she behaves in a loving and nurturing manner. *Id.* at 9.

We again discern no abuse of discretion by the trial court. As Mother argues, it was undisputed during the termination hearing that her visits with Child go well. Mother presented unrebutted testimony describing her positive interactions with Child and opined that they share a bond. N.T., 1/23/18, at

32-33. CYF casework supervisor, Scott Brumbaugh, confirmed that Mother is "very loving and nurturing" toward Child. *Id.* at 9.

However, as discussed above, Child was born in November 2016 and entered foster care in December 2016. By the time of the hearing, Child was just over a year old. Child had spent nearly her entire life in foster care, and her only consistent experience of Mother had been supervised visits. Under the circumstances, it was reasonable for the trial court to conclude that Mother and Child do not share a necessary and beneficial bond. *See In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008) (observing that the relationship between K.Z.S. and his mother "must be fairly attenuated," given that K.Z.S. had been in foster care most of his young life, and that he had only limited contact with his mother during that time). As this Court has emphasized, "a child develops a meaningful bond with a caretaker when the caretaker provides stability, safety, and security regularly and consistently to the child over an extended period of time." *Matter of Adoption of M.A.B.*, 166 A.3d 434, 449 (Pa. Super. 2017). Child's pre-adoptive foster parents have been her primary source of stability, safety, and security throughout her life. Thus, the record supports the court's finding that Child shares a significant bond with her foster parents and that terminating Mother's parental rights will best serve Child's

needs and welfare by allowing her to achieve permanence through adoption into their family.[4]

Based on the foregoing, we conclude that the trial court did not abuse its discretion by terminating Mother's parental rights involuntarily. Therefore, we affirm the court's January 24, 2018 decree.

Decree affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/2018

_____

[4] We note that Dr. O'Hara's testimony during the permanency review hearing on October 31, 2017, supports this conclusion.

> Well I think there is some limitation of me responding to this as I have no[t] been able to observe either party with [Child] since March of 2017. There have been reports from FICS' perspective that overall both parties do well with [Child]. It would be my opinion that yes there would be some detriment if termination were ever to occur. I think based on the parents['] interactions with their daughter that there would be some potential detriment for [Child] here. On the other hand, it is my opinion at this point that there are so many ongoing pervasive significant concerns that the concerns from my perspective and the risk factors for [Child] if she were to be placed with her parents these concerns would outweigh any potential detriment.

N.T., 10/31/17, at 13-14.

- 11 -